IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

Civil No. 1:16-CV-00406

Vanessa Dundon, Jade Kalikolehuaokalani Wool, Crystal Wilson, David Demo, Guy Dullknife III, Mariah Marie Bruce, Frank Finan, Isreal Hoagland-Lynn, and Noah Michael Treanor,

on behalf of themselves and all similarly-situated persons,

Plaintiffs,

vs.

Kyle Kirchmeier, Morton County, City of Mandan, Jason Ziegler, Stutsman County, Chad Kaiser, and Does 1-100,

Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS KYLE KIRCHMEIER, MORTON COUNTY, CITY OF MANDAN, JASON ZIEGLER, STUTSMAN COUNTY, AND CHAD KAISER'S SECOND MOTION TO DISMISS**

\*\*\*     \*\*\*     \*\*\*

## I. INTRODUCTION

Plaintiffs' attempt to portray the events of November 20, 2016 at the Backwater Bridge as peaceful and non-aggressive is directly contradicted by the purely factual allegations in their pleadings and the record established by the Plaintiffs' themselves in this action. Matters properly considered by this Court in relation to Law Enforcement's pending motion to dismiss establish Plaintiffs have failed to plead plausible claims of violation of their constitutional rights by the individually named law enforcement defendants, or by the named political subdivision defendants (collectively "Law Enforcement"). In the alternative, even assuming a plausible claim of violation of Plaintiffs' constitutional rights has been alleged, such constitutional rights were not at the time of the incident clearly established, thereby entitling individual law enforcement defendants to qualified immunity from suit. Dismissal of Plaintiffs' claims is appropriate at this time.

1

## II. RELEVANT FACTS

### Matters Which May Be Considered by the Court

Law Enforcement disagrees with Plaintiffs' assertion that materials outside the scope of what this Court is permitted to consider in ruling upon a Rule 12(b)(6) motion to dismiss have been presented by Law Enforcement. To the extent the Court deems any matter presented falls outside the permitted scope of Rule 12(b)(6), Law Enforcement requests the Court simply disregard such material in ruling upon the pending motion.

A district court may consider the plaintiffs' complaint, "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment. *Miller v. Redwood Toxicology Laboratory, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012); *Williams v. Employers Mutual Casualty Company*, 845 F.3d 891 (8th Cir. 2017) (quoting *Miller*). In *Miller v. Redwood Toxicology Laboratory, Inc.*, the United States Court of Appeals for the Eighth Circuit, as with the district court, considered in relation to a Rule 12(b)(6) motion to dismiss not only the plaintiff's complaint and amended complaint, but also the record created as a result of the plaintiff's motion for temporary restraining order, preliminary injunction and expedited discovery, all of which were filed by plaintiff after the defendant's motion to dismiss was filed.

In addition, to the extent Plaintiffs have submitted evidence which contradicts Plaintiffs' own factual allegations in the First Amended Complaint, this Court is not required to accept as true such allegations for purposes of this motion. *See Goines v. Valley Community Services Board*, 822 F.3d 159 (4th Cir. 2016) (in the context of considering a motion to dismiss under Rule 12(b)(6), if an inconsistency exists between the pleading and an exhibit to the pleading upon which the

pleading is based, the exhibit prevails); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (in considering a Rule 12(b)(6) motion to dismiss, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit . . . [n]or is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" (citations omitted)); *Natal v. Christian and Missionary Alliance*, 878 F.2d 1575, 1576 (1st Cir. 1989) (in considering a Rule 12(b)(6) motion to dismiss, the court need not accept as true "those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise . . . ." (citation omitted)); *Ace Securities Corp. Home Equity Loan Trust, Series . . .*, 5 F.Supp.3d 543, 551 (S.D.N.Y. 2014) ("In addition to the allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit, as well as any judicially noticeable matters." (citing *Halebaian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (other citations omitted)).

Courts also appropriately consider video recordings in deciding Rule 12(b)(6) motions to dismiss when presented by the plaintiff in support of the plaintiff's claims. *See Bogie v. Rosenberg*, 705 F.3d 603, 608-09 (7th Cir. 2013) (noting contents of video recording incorporated by reference into complaint contradicted allegations in complaint, and therefore contradicted allegations were not deemed true for purposes of Rule 12(b)(6) motion to dismiss); *Estate of Ronquillo by and through Esate of Sanchez v. City and County of Denver*, 2017 WL 64223342 *2 (10th Cir. Dec. 18, 2017) (considering contents of video recording attached as exhibit to complaint and determining pleadings blatantly contradicted by video need not be deemed true in context of Rule 12(b)(6) motion to dismiss excessive force claim based on qualified immunity grounds).

Matters of Public Record or of Which Judicial Notice May Be Taken
and Plaintiffs' Factual Admissions

Plaintiffs do not challenge Law Enforcement's request the Court take judicial notice of those matters described in paragraphs 1, 2, 4, 7-14, 20 and 21 of Law Enforcements' principal brief (doc. 136 at pp. 5-8). Plaintiffs also do not address, and therefore concede, their factual admissions described in paragraphs 1, 4-8, 11-13, 15, 18, 21-22 and 27 of Law Enforcement's principal brief (doc. 136 at pp. 9-17).

## III. ARGUMENT

All claims against Law Enforcement defendants should be dismissed as 1) Plaintiffs' purely factual allegations, along with other matters this Court is allowed to consider in relation to this Rule 12(b)(6) motion, establish Plaintiffs' have not alleged a plausible violation of their constitutional rights by Law Enforcement, and 2) even if Plaintiffs have alleged a plausible claim for violation of a constitutional right, such right was not so clearly established at the time of the deprivation that a reasonable officer would have understood his conduct was unlawful under the circumstances presented, thereby establishing the individual Defendants are entitled to qualified immunity from suit.

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." ... Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved **prior to discovery**." .... Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."

*Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009)(bold added).

### A. <u>Plaintiffs' Retaliation Claim Fails</u>

Plaintiffs assertion the actions of Law Enforcement "truncated and deprived them of their engagement in constitutionally protected activities and/or caused them to endure pain and suffering in order to continue any engagement in those activities", (doc. 137 at p. 18) is without merit. As explained in Law Enforcement's principal brief (doc. 136 at pp. 30-34), the Plaintiffs and other

protesters had no constitutional right to exercise their First Amendment rights at any location where the alleged force was applied.

"[T]he fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views 'whenever and however and wherever they please.'" *Wood v. Moss*, 134 S.Ct. 2056, 2066, 188 L.Ed.2d 1039 (2014) (quoting *United States v. Grace*, 461 U.S. 171, 177-178, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), quoting *Adderley v. Florida*, 385 U.S. 39, 48, 87 S.Ct. 242, 17 L.Ed 2d 149 (1966)). The Supreme Court has clearly indicated the First Amendment cannot be utilized as a justification for trespass and that the government has the right to enforce trespass laws in relation to both private and public property. *See Adderley v. State of Florida*, 385 U.S. at 48, (rejecting protesters' argument they had a constitutional First Amendment right to remain in the curtilage of a jailhouse over the objection of the sheriff, concluding "[t]he United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose.").

*Bernini v. City of St. Paul*, 655 F.3d 997 (8th Cir. 2012), discussed at length in Law Enforcement's principal brief (doc. 136 at pp. 22-30), also establishes demonstrations lose their character as protected expression when demonstrators engage in unlawful conduct. As noted by the United States Court of Appeals for the District of Columbia in addressing a First Amendment retaliation claim brought by demonstrators against officers, a decision cited in *Bernini*:

> Plaintiffs contend that First Amendment principles prohibited their arrest without first being given a chance to disperse. In sum, plaintiffs contend that they were marching peacefully and if peaceful marchers can be arrested without warning because some other protestors resorted to violence, it will chill First Amendment rights. The premise of this argument is fundamentally flawed, however, because . . . it appeared to officers as if the entire crowd was rioting or encouraging riotous acts. And "where demonstrations turn violent, they lose their protected quality as expression under the First Amendment." *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

*Carr v. District of Columbia*, 587 F.3d 401, 410, n.6 (D.C. Cir. 2009). The materials this Court is permitted to consider in relation to the pending motion to dismiss establish protesters, whom Plaintiffs concede they were a part of, were in fact engaged in illegal conduct. Among other things, just one of the several sporadic video clips filed by Plaintiffs shows at least 10 instances of protesters throwing live CS or smoke canisters back at law enforcement officers (doc. 91 at MP4 filed named "20161120_Bridge_WaterCannon_Teargas_Rubberbullets" at meters 0:23-0:30 (1 canister thrown), 6:14-6:23 (2 canisters thrown), 7:20-7:57 (4 canisters thrown), 9:49-9:53 (1 canister thrown), 10:20-10:45 (2 canisters thrown)). This video also shows protesters attempting to move the concertina wire of the barricade. *Id.* at meter 5:29-5:40. Other video presented by Plaintiffs to the Court also depicts protesters standing on the barricade and removing the first burnt out truck from the barricade, shows protesters failing to heed law enforcement commands to get off the bridge, depicts another instance of a live canister being thrown at law enforcement, etc., discussed with citations in Law Enforcement's principal brief. Plaintiffs also concede a law enforcement officer was injured by an object thrown by protesters. (Doc. 137 at p. 46.) This was not a peaceful prayer protest.

>    B.    **Plaintiffs' Fourth Amendment Excessive Force Claim**
>    1.    **Plaintiffs Have Not Alleged A "Seizure" under the Fourth Amendment**

Plaintiffs' assertion any physical touch by law enforcement constitutes a per se "seizure" under the Fourth Amendment is without merit, and mischaracterizes applicable law. Although an arrest may be effected by either the slightest application of physical force with authority or a show of authority submitted to by the subject, both means of affecting a seizure under the Fourth Amendment require an objective manifestation of intent by law enforcement to acquire physical control over the subject through termination of movement.

As explained by the United States Supreme Court,

> Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. *Terry v. Ohio*, 392 U.S. [1,] 19, n. 16, 88 S.Ct. [1868,] 1879, n. 16.
>
> \*\*\*
>
> We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. . . . As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.
>
> \*\*\*
>
> **We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.**

*United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (bold added). The Supreme Court clarified the meaning of the above-bolded language ("Mendenhall Test") in *California v. Hodari D.*, 499 U.S. 621 (1991), by explaining:

> [*Mendenhall*] says that a person has been seized "only if," not that he has been seized "whenever"; it states a *necessary*, but not a *sufficient*, condition for seizure – or, more precisely, for seizure effected through a "show of authority." *Mendenhall* establishes that the test for existence of a "show of authority" is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officers' words and action would have conveyed that to a reasonable person.

*Hodari D.*, 499 U.S. at 628 (italics in original). Although the Mendenhall Test was established in a case involving a show of authority as opposed to the use of physical force, the objective manifestation of intent to obtain physical control requirement applies to both means of effecting a seizure. As further explained by the United States Supreme Court:

> We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request **or otherwise terminate the encounter**. That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus.

*Florida v. Bostick*, 501 U.S. 429, 439-40 (1991) (bold added).

7

> "[W]hen a person "has no desire to leave" for reasons unrelated to the police presence, the "coercive effect of the encounter can be measured better by asking whether "a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter[]".

*Brendlin v. California*, 551 U.S. 249, 255 (2007), quoting *Florida v. Bostick*, 501 U.S. at 435-36. "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 1699, 85 L. Ed. 2d 1 (1985), citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). "[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007), quoting *Brower*, 489 U.S. at 596-97. "[T]he subjective intent of the officers is relevant to an assessment of the Fourth Amendment implication of police conduct only to the extent that intent has been conveyed to the person confronted." *Brendlin*, 551 U.S. at 260, citing *Michigan v. Chesternut*, 486 U.S. 567, 575, n.7 (1988). Neither the United States Supreme Court nor the United States Court of Appeals for the Eighth Circuit has ever held that an officer's use of force alone constitutes a per se seizure under the Fourth Amendment.

Plaintiffs' reliance upon *Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201 (8th Cir. 2013), is misplaced. Although the *Atkinson* Court cited *California v. Hodari D*., 499 U.S. 621 (1991) for the proposition "a seizure of a person is effected by the slightest application of physical force despite later escape," *id*. at 1208, the *Atkinson* Court expressly noted in response to the officer's assertion he did not intend to arrest the subject when force was applied, but instead only intended to retake his cell phone, that "a reasonable jury could find [the officer] 'objectively manifested,' an intent to arrest [the subject]. The reported fury of [the officer's] charge temporarily incapacitated [the subject], and immediately thereafter [the officer] ordered [other] police officers to take [the subject] into custody." *Atkinson*, at fn. 4 (citing *Brendlin v. California*, 551 U.S. at

8

260, for "objectively manifested" standard). The determination of whether a seizure under the Fourth Amendment has occurred involves an all of the facts and circumstances inquiry to ascertain whether the officer's conduct in applying force objectively manifested an intent to secure government control over the subject, i.e. to effectuate an arrest or detention. Application of physical force, without such an objective manifestation of intent, does not constitute a seizure under the Fourth Amendment.

It should be noted the Tenth Circuit interprets *Hodari D*. differently than the Eighth Circuit by concluding *Hodari D*. does not actually stand for the proposition the use of physical force results in a seizure regardless of whether it successfully results in a termination of movement. The Tenth Circuit construes the Supreme Court's discussion of this subject in *Hodari D*. to constitute mere dicta in describing what constituted a seizure under common law, and notes the *Hodari D*. Court expressly stated:

> We have consulted the common-law to explain the meaning of seizure …. [and] neither usage nor common-law tradition makes an attempted seizure a seizure. The common law may have made an *attempted seizure* unlawful in certain circumstances; but it made many things unlawful, very few of which were elevated to constitutional proscriptions.

*Brooks v. Gaenzle,* 614 F.3d 1213, 1221 (10th Cir. 2010) (italics in original). Attempted but unsuccessful seizures are beyond the scope of the Fourth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 & n.7 (1998). The Tenth Circuit does not equate the use of force with a seizure under the Fourth Amendment unless the use of physical force results in the government's acquisition of control of the subject through termination of the subject's freedom of movement. *See Brooks v. Gaenzle*, 614 F.3d at 1221 (deputy did not seize plaintiff by shooting plaintiff as he fled as the shooting did not prevent plaintiff's freedom of movement or otherwise succeed in stopping him – seizure under Fourth Amendment requires some form of intentional acquisition of physical control through termination of movement by physical force or submission

to show of authority; analyzing United States Supreme Court precedent, including among other cases, *Mendenhall* and *Hodari D.*); *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (there was no "seizure" under Fourth Amendment where plaintiff sustained injuries as a result of being shoved aside by sheriff during course of sheriff taking plaintiff's adult daughter into protective custody because a seizure under Fourth Amendment requires intentional acquisition of physical control - citing among other cases *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); "[t]he sheriff only intended to remove Plaintiff from his path to the door; he did not intend to acquire physical control over her. Thus, no Fourth Amendment seizure occurred.").

As a practical matter, it would make no sense for any intentional touching by law enforcement to automatically constitute a seizure under the Fourth Amendment, without taking into account whether a reasonable person would objectively perceive such touching as a communication the person was not free to disengage from the officer. Query, does a seizure occur when an officer shakes the outstretched hand of another person in greeting? In such an instance, the officer intends to physically touch the other person, but no reasonable person could conclude such a touching was for the purpose of gaining physical control through termination of the person's movement. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 n.4 (8th Cir. 2013) (noting officer's actions "objectively manifested" an intent to arrest the plaintiff by charging into plaintiff and temporarily incapacitating plaintiff and immediately thereafter ordering other officers to take plaintiff into custody).

Other Eighth Circuit cases interpreting *Hodari D*, including *Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993), and *Ludwig v. Anderson*, 54 F.3d 465 (8th Cir. 1995), are factually distinguishable from the present case as they involved fatal police shootings where a termination of the subject's movement was not at issue. In addition, in police pursuit cases, such as *Cole*, the fact the force at

issue is applied during a pursuit necessarily entails an intent to gain physical control over the subject through termination of freedom of movement. In other words, the objective manifestation test is automatically met in pursuit cases.

In the present case, Plaintiffs have not alleged, nor were they, arrested or detained by Law Enforcement on November 20, 2016. Plaintiffs do not allege they were advised by Law Enforcement they were not free to walk away from Law Enforcement. Plaintiffs admit they freely walked south off the Bridge, sometimes to change into warmer clothes or otherwise warm up before returning to the barricade and voluntarily and intentionally walking within range of the force allegedly being applied by Law Enforcement. Plaintiffs' pleading establishes they were at all times able to remove themselves from the presence of Law Enforcement and from all force applied by simply voluntarily disengaging from Law Enforcement, and proceeding south across the Bridge from where they came-which they did. In addition, Plaintiffs' allegations, even if accepted as true, objectively manifest Law Enforcement's intention in applying the alleged force of keeping Plaintiffs and other protesters away from Law Enforcement – the exact opposite of what is required for a seizure under the Fourth Amendment.

Plaintiffs' reliance upon the Ninth Circuit case of *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) is also misplaced. In *Nelson*, the plaintiff was struck in the eye by a pepper spray pellet shot by officers as they were clearing a property of party goers. The Court in *Nelson*, in response to the officers' argument their actions could not constitute a seizure because their intent was to disperse the crowd, stated "[t]he intent that counts under the Fourth Amendment is the intent [that] has been conveyed to the person confronted, and the criterion of willful restriction of freedom of movement is no invitation to look to subjective intent when determining who is seized." *Id*. at 877 (quoting *Brendlin*, 551 U.S. at 260-61). In other words, *Nelson* supports the proposition

the proper inquiry is whether a reasonable person would conclude an officer's conduct in using force, in light of all of the facts and circumstances, objectively manifested an intent to arrest the subject through termination of movement.

Although there are some factual similarities between *Nelson* and the present case, the two cases are materially distinguishable. The Court in *Nelson* noted the officers' use of force actually resulted in a termination of the plaintiff's movement and resulted in the plaintiff's submission (i.e. plaintiff was shot in the eye with pepper spray pellet causing him to drop to the ground immobilized until he was taken away by another). *Id*. at 875-76. In the present case, Plaintiffs and other protesters did not submit to Law Enforcement, and instead continued their illegal conduct for prolonged periods of time despite Law Enforcement's alleged application of force. Also, the protestors freely moved back and forth from the Bridge to their camps where there was no law enforcement presence. In addition, the *Nelson* Court noted the force was applied in a "very narrow and confined space", and officers did not leave any means of egress for plaintiff and the other party goers who were attempting to leave the party and were asking officers where they should go. *Id*. at 873-74. In other words, the officers conduct in *Nelson* objectively manifested an intent to obtain government control over plaintiff as plaintiff had no way to disengage from the officers. In the present case, Plaintiffs' own allegations and the record established by the Plaintiffs themselves establishes they were at all times free to proceed south across the bridge away from law enforcement officers and away from all force allegedly applied. The officers in *Nelson* were also unable to identify any laws which were broken by the plaintiff. *Id.* at fn. 5. In the present case, Law Enforcement has identified in its principal brief numerous laws broken by the Plaintiffs and other protesters during the riot on or north of the closed Bridge. Further, the officers in *Nelson* were proceeding forward toward plaintiff and other party goers to herd them out of the premises

at issue. In the present case, officers held a defensive position behind the barricade with Plaintiffs and protesters advancing on them, with a single protester (not a Plaintiff) successfully breaching the barricade, numerous protesters standing atop the barricade, protesters throwing objects at law enforcement officers and injuring an officer (additional video of object thrown at law enforcement appears briefly in the sky at doc. 100 at meter 4:11-4:12), protesters removing a portion of the barricade with a semi-truck, and protesters attempting to flank law enforcement's defensive position. The video evidence presented by Plaintiffs shows the semi-truck was still idling on the Bridge not far behind the protester shield wall throughout this incident, posing on ongoing threat of removal of the second burned out truck or other parts of the barricade. (Doc. 100 at meter 1:58 to 3:40.) No reasonable person could conclude, under these circumstances, that any application of force by law enforcement officers against individuals on the opposite side of the barricade was for the purpose of securing government control over them, or that the subjects were not free to simply walk away. *Nelson* is factually distinguishable from the present case.

Plaintiffs have failed to allege a "seizure" by Law Enforcement governed by the Fourth Amendment. Therefore, such claim should be dismissed.

> **2. Law Enforcement's Alleged Use Of Force Was Objectively Reasonable As A Matter of Law**

Even assuming Plaintiffs have alleged a "seizure" under the Fourth Amendment, which is denied, the relevant inquiry is whether the force applied was "objectively reasonable" under a totality of the circumstances analysis. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). As discussed in Law Enforcement's principal brief (doc. 136 at pp. 38-47), Plaintiffs own allegations, along with those portions of the record submitted by the Plaintiffs themselves, establish Law Enforcement's alleged application of force was objectively reasonable under the circumstances, as a matter of law, and consistent with the standards applied in *Bernini*. The protesters whom

Plaintiffs were part of were throwing objects at Law Enforcement, were advancing on and standing upon Law Enforcements' barricade (a defensive position), had already removed one burnt-out truck which had been log-chained to and was a part of the barricade (i.e. it was not abandoned as asserted by Plaintiffs), and had received verbal and signage warnings not to be on the bridge and to stay away from the barricade. Such record also establishes large signs stating "No Trespassing on Bridge" (Plaintiffs do not deny this and video presented by Plaintiffs clearly shows them) and "No Trespassing" (Plaintiffs' concede these were present) were posted along the barricade. Plaintiffs also observed law enforcement officers applying physical force to others in the vicinity of the barricade, yet decided to voluntarily enter the same vicinity.

This case is factually distinguishable from the relatively peaceful demonstration in an open public park in *Barham v. Ramsey*, 434 F.3d 565 (E.D. Va. 2006) cited by Plaintiffs. Unlike the present case, there was no basis in *Barham* for officers to believe the individuals arrested had violated any law. *Id.* at 574. In *Barham*, the only illegal activities observed by law enforcement had occurred before the demonstrators converged on the park. *Id.* In addition, the demonstrators in *Barham* were not trespassing – the arrests occurred in a public park. *Id.* The *Barham* court noted that it was impossible to distinguish between a demonstrator engaging in an unlawful assembly and a person who just happened to be walking through the public park. In this case, force was allegedly applied within range of the barricade located north of the Bridge, all areas off limits to the general public. Also, no Plaintiff or other protester who remained south of the barricade was arrested or threatened with arrest.

### 3. In the Alternative, Even Assuming a Constitutional Violation of Plaintiffs' Rights Has Been Alleged, Such Rights Were Not Then Clearly Established

14

Alternatively, even assuming Plaintiffs have adequately alleged a violation of their constitutional rights, such rights were not clearly established as of November 20, 2016, thereby entitling the individual law enforcement officers to qualified immunity from suit.

Plaintiffs claim the use of water constituted excessive force should be dismissed as a matter of law as Plaintiffs cite no case law on the use of water against protesters in the United States, let alone case law determining the use of water by law enforcement constitutes excessive force. As there is no clearly established, existing precedent establishing the use of water by law enforcement officers constitutes excessive force, even assuming, arguendo, such use could constitute excessive forc, the individual officers would none-the-less be entitled to qualified immunity from suit. *See Kisela v. Hughes*, 138 S.Ct. 1148, 1151 (2018) (per curiam) ("Although this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.").

Similarly, Plaintiffs cite no case law involving the use of less-lethal munitions from a strictly defensive position by law enforcement under a totality of the circumstances similar to those in the present case. All claims against Individual law enforcement officer defendants should be dismissed as their alleged conduct did not violate clearly established rights of the Plaintiffs at the time of the alleged conduct.

### C. Plaintiffs' Other Claims

Law Enforcement relies upon its arguments made in Law Enforcement's principal brief for the bases justifying dismissal of Plaintiffs' other claims against Law Enforcement.

## IV. CONCLUSION

For the foregoing reasons, Law Enforcement respectfully requests dismissal of Plaintiffs' claims, with prejudice.

Dated this 18th day of May, 2018.

                         BAKKE GRINOLDS WIEDERHOLT

                         By: */s/ Randall J. Bakke*
                              Randall J. Bakke (#03989)
                              Shawn A. Grinolds (#05407)
                              Bradley N. Wiederholt (#06354)
                              Special Assistant State's Attorneys for Morton and Stutsman Counties
                              300 West Century Avenue
                              P.O. Box 4247
                              Bismarck, ND 58502-4247
                              (701) 751-8188
                              rbakke@bgwattorneys.com
                              sgrinolds@bgwattorneys.com
                              bwiederholt@bgwattorneys.com

                              Attorneys for Defendants Kyle Kirchmeier, Morton County, City of Mandan, Jason Ziegler, Stutsman County, and Chad Kaiser

# CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2018, a true and correct copy of the foregoing **Reply Memorandum of Law In Support of Defendants Kyle Kirchmeier, Morton County, City of Mandan, Jason Ziegler, Stutsman County, and Chad Kaiser's Second Motion to Dismiss** was filed electronically with the Clerk of Court through ECF.

    Rachel Lederman
    Rachel Lederman & Alexsis C. Beach, Attorneys
    558 Capp Street
    San Francisco, CA 94110
    (415) 282-9300
    rachel@bllaw.info

    Melinda Power
    West Town Law Office
    2502 W. Division
    Chicago, IL 60622
    Melindapower1@gmail.com

    Mara Verheyden-Hillard
    Partnership for Civil Justice Fund
    617 Florida Avenue NW
    Washington, D.C. 20001
    mvh@justiceonline.org

    Janine Hoft
    Shubra Ohri
    People's Law Office
    1180 N. Milwaukee Ave
    Chicago, IL 60642
    janinehoft@gmail.com
    shubraohri@gmail.com

    By:   */s/Randall J. Bakke*
           RANDALL J. BAKKE