UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
Western Division

| | |
|---|---|
| VANESSA DUNDON, ET AL.<br><br>on behalf of themselves and all similarly-situated persons,<br><br>    Plaintiffs,<br><br>v.<br><br>KYLE KIRCHMEIER, ET AL.,<br><br>    Defendants. | Civil No.: 1:16-cv-406 DMT ARS |

**MOTION TO COMPEL TIGERSWAN TO PRODUCE
ADEQUATELY PREPARED DESIGNEES FOR DEPOSITION AND FOR SANCTIONS**

Plaintiffs, through counsel, request this Court issue an order compelling TigerSwan LLC, a 30(b)(6) deponent, to prepare designees for deposition who can testify knowledgeably, fully, and unevasively, pursuant to Federal Rules of Civil Procedure 30 and 37, after it failed to do so for the June 10, 2021, deposition. Plaintiffs further request that TigerSwan be ordered to bear the fees and costs of this motion and the June 10, 2021 deposition for failure to appear as adequately prepared.

**Procedural Background**

On March 12, 2021, plaintiffs noticed TigerSwan LLC of a Rule 30(b)(6) deposition by subpoena and identified seven Topics for Examination ["the Topics"] with that notice. *See* Depo Exh. 1, Amended Notice of Deposition and Topics for Examination. For almost three months following service of the subpoena, plaintiffs' counsel worked with TigerSwan's counsel to arrange a mutually convenient date for deposition and gave TigerSwan ample time to properly

1

prepare for the deposition. In advance of the deposition, plaintiffs' counsel and TigerSwan's counsel communicated by email and had a meet and confer phone conference, where counsel walked through every topic of examination together and plaintiffs' counsel answered any questions posed by TigerSwan's counsel as to those topics. After that meet and confer of Tuesday, May 11, 2021, TigerSwan expressed no further concerns about the Topics.

On June 10, 2021, a mutually agreed-upon date, TigerSwan presented a single designee to testify as to all Topics in the notice. The designee appeared for the deposition having reviewed the Topics and understanding his obligation to testify as to TigerSwan's collective knowledge, not merely his own personal knowledge. (Deposition transcript, pp. 15:2–9; 16:7–17:5; 17:20–18:2). Despite this, TigerSwan's preparation of its designee to testify on behalf of the entity on all Topics consisted of only two things:

(1) the designee did a "cursory review" of some publicly available documents; (18:7–9; 91:2–7; 164:17–20; 168:2–4); and
(2) the designee had a brief phone call with one other employee, who was the deputy program manager during the events identified in the Topics,[1] to see what information the two individuals had "at our personal disposal and from memory" for only some of the Topics. (18:22–19:8; 194:17–22).

The designee did not attempt speak to any other personnel of TigerSwan including those whose names are present on TigerSwan created documents evidencing their infiltration operations. Throughout the deposition, the designee responded at least 50 times that he either did not know or did not remember, and for what he did know, he repeatedly testified limited to his personal knowledge, without benefit of the entity's knowledge and was extensively evasive in his responses based on his claimed lack of personal knowledge and failure to be prepared as to

---

[1] The current TigerSwan CEO was also present in a non-testifying capacity at the deposition, but he was not involved in the events at issue, and the designee lacked knowledge as to whether he was even employed by TigerSwan at that time. (157:14-20)

knowledge of the entity (*See, e.g.,* 40:12 – 42:7; 87:15 – 92:14; 180:6 - 183:22).

TigerSwan relied on its designee's asserted lack of knowledge and inadequate preparation as to the activities of the entity to assert that it, as an entity, lacked knowledge as to the Topics – even when confronted with publicly available documents created by the entity itself, that the designee admitted he reviewed, that explicitly contradicted TigerSwan's claimed lack of knowledge or activities. These activities include, centrally, TigerSwan's infiltration of and presence among water protectors and protestors as well as TigerSwan's provision of derogatory and false information to law enforcement. (Topics, 1, 3, 5, 6).

On June 29, 2021, counsel for the plaintiffs and TigerSwan appeared at the status conference before this court regarding this matter. After the status conference, counsel for the plaintiffs and TigerSwan communicated further by email without resolution of this matter.

## **Legal Argument**

Fed. R. Civ. P. 30(b)(6) provides that a nonparty organization may be subpoenaed for a deposition and the organization must designate a deponent or deponents to testify about information known or reasonably available to the organization on matters described with reasonable particularity. Fed. R. Civ. P. 30(b)(6). A Rule 30(b)(6) deponent entity must prepare a knowledgeable witness to testify on the topics identified based on what should be reasonably known to the entity as a whole. *See CitiMortgage, Inc. v. Chi. Bancorp, Inc.,* No. 4:12–CV–00246, 2013 WL 3946116, at *1 (E.D. Mo. July 31, 2013). "The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents." *Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, No. 8:10CV187, 2015 WL 429964, at *8 (D. Neb. Feb. 2, 2015) (citation omitted). The entity must make a conscientious good faith effort to prepare its designee(s) to answer the questions posed

3

"fully, completely, unevasively" about the relevant topics. *Id*.

By TigerSwan making only two superficial efforts to prepare for the deposition—a cursory review of some documents and one brief call— it did not make "a conscientious good–faith endeavor" to send a designee (or designees) who were both knowledgeable and prepared to answer *any* of the seven Topics "fully, completely and unevasively." *See Whatley v. Canadian Pac. Ry. Ltd*., No. 1:16–cv–74, 2021 U.S. Dist. LEXIS 93915, at *12 (D.N.D. May 14, 2021).

### I.  TigerSwan's limited answers were evasive and appeared to be false and misleading.

TigerSwan was intentionally evasive and offered what would appear to be perjured testimony. When asked about TigerSwan's role in the camps and with the protesters (Topics 1, 2, and 5), TigerSwan stated at the onset that it did not understand the word "infiltration" in Topic One, so it had no responsive information for the topic. (24:3–26:6). This despite TigerSwan's own created and logoed documents repeatedly using the word "infiltrate" and "infiltration" regarding its operations at Standing Rock, that the deponent reviewed in advance.

> Q. [by plaintiffs' counsel Mara Verheyden-Hilliard] Did you have any personnel or agents or contractors who were at that time undercover or infiltrating among the demonstrators at the Standing Rock protests overall?
>
> A. [TigerSwan by designee Mr. Sweeney] To the best of my knowledge and the knowledge of the company, the answer to that question is no.
>
> Q. When did you first have personnel infiltrating the protests at Standing Rock?
>
> A. I don't understand the word "infiltrate".
>
> Q. Did you at any time have personnel who posed as protestors and spent time among the protestors who were at Standing Rock in 2016?
>
> A. To the best of my knowledge, TigerSwan did not.
>
> (24:3-18)

Q: I'm asking if you are aware of any entity or personnel that were infiltrating, posing as protestors, operating among protestors?

A. Again, ma'am, I would ask you to clarify the word "infiltrate".

Q. What do you understand the word "infiltrate" to mean?

A. Infiltrate would be a term that would be used on a military action for one force to essentially sneak in to another, so an opposing force's camp area of operations, whatever, and to do so --

…Q. So it's your testimony under oath that TigerSwan did not have any personnel who engaged in such activities at Standing Rock?

A. That's my testimony. Yes, ma'am.

Q. That's TigerSwan's testimony?

A. That's TigerSwan's testimony. Yes, ma'am.

(25:6 – 26:6)

TigerSwan continued to deny under oath even discussing having persons infiltrate the camps at Standing Rock. (26:11 – 28:6)

After being shown TigerSwan's own documents where TigerSwan agents use the words "infiltrate" and "infiltration" and discuss their planning and execution of infiltration of the Standing Rock camps, TigerSwan was asked if those documents helped the designee understand what infiltrate meant, the answer was still no.

Q. [by Ms. Verheyden-Hilliard] Pointing to where it says "WHERE" on this page, it says "Will infiltrate one of the Standing Rock camps". Do you see that?

A. Yes, ma'am.

Q. Do you see the word "infiltrate"?

A. Yes, ma'am.

Q. So when I asked you earlier with regard to topic one, you said that you didn't understand what infiltrate meant. Does this assist you?

5

> A. No, it really doesn't.

(44:9–20).

When asked what TigerSwan understands "infiltrate" to mean in its very own documents, the evasive answers continued:

> Q. What do you understand this to mean?
>
> A. Oh, I understand what it means. I don't understand why that word would be used. Again that would essentially mean that we were at a state of war, which we are not, we're not the military, and we're not law enforcement. So I don't know why that word would be used.
>
> Q. If TigerSwan had personnel who went to a camp at Standing Rock and did not identify themselves as TigerSwan personnel but rather presented themselves as a water protector or a protester, what word would you use to describe that?
>
> A. Not smart. That would be the word that I would use — sorry, two words.

(44:21–45:13).

> A: [TigerSwan] I don't like the word "infiltration" because infiltration sets up a very belligerent relationship that is really used in a time of armed conflict. I don't like that word so --
>
> Q. [by Ms. Verheyden-Hilliard] Well, putting aside your preference for terminology and whether you like words or don't like words, what we're tying to get at is the definition. TigerSwan has used the word "infiltrate" as in "Will infiltrate one of the Standing Rock camps" on the same page that it says it's traveling to Standing Rock with protestors to gather information. TigerSwan itself refers to this as infiltration. So I want to be sure that in this deposition and as we turn back to topic for examination number one that, when we are referring to infiltration or undercover activities, you are not simply deciding that you don't like the word "infiltration" and thereby stating that TigerSwan has no responsive information?
>
> A. I'm sorry, TigerSwan has what?
>
> Q. That you simply don't like the word infiltration and thereby are stating that TigerSwan has no responsive information. So you said you didn't understand what infiltrator or infiltration meant. I have turned you to a document that has been drafted by TigerSwan and edited by TigerSwan and further reviewed by TigerSwan leadership that actually explicitly refers to infiltration in November of 2016.

(46:13 – 48:10)

6

This was followed by a improper speaking objection by counsel for TigerSwan. (48:6 - 52:15)

Presented with document after document, which the designee admitted he had access to in advance in its preparation, written on TigerSwan letterhead and/or communicated between TigerSwan personnel, TigerSwan continued its evasive and/or perjured answers and admitted that it did not attempt to prepare itself for the deposition on the Topics addressing two key points: infiltration and communications to law enforcement.

> Q: [by Ms. Verheyden-Hilliard] Under the heading: "CI/HUMINT," confidential informant/human intelligence," it states, "Having TigerSwan confidential informant/human intelligence infiltrators on the ground is critical in minimizing lost construction time. "Advanced warning of protester movement allowed TigerSwan security to liaise with law enforcement in a timely manner." What efforts did you make to determine what information was in the possession of TigerSwan personnel with regard to TigerSwan's confidential informant human intelligence infiltrators who were on the ground.
>
> A. I'm sorry, what efforts did we make --
>
> Q. In advance of this deposition.
>
> A. We made no effort regarding that.

(97:20 – 98:14)

TigerSwan continued to deny having infiltrator activity even when asked about TigerSwan's own "Daily HUMINT Reporting" for December 8, 2016, (Depo Exh. 3), stating "no other company has infiltrated these activists' groups on a long-term basis." (143:2-152:11; Exh. 3 pg. 14).

The designee said he personally did not like the word "infiltration" so he would not use it to describe TigerSwan's actions. (46:10–17). *See CitiMortgage, Inc. v. Chi. Bancorp, Inc.,* No. 4:12–CV–00246, 2013 WL 3946116, at *1 (E.D. Mo. July 31, 2013) (stating the Rule 30(b)(6) deponent presents the entity's position on the topic, the deponent does not give his personal

7

testimony). TigerSwan had ample notice of this issue for questioning as identified in Topics 1, 2, and 5 and was obligated to properly prepare itself to provide information in response.

TigerSwan's refusal to testify forthrightly as to its documented infiltration activities as detailed in the Topics by claiming it did not either understand or did not like the word "infiltration," despite TigerSwan itself using that word repeatedly in its own documents reflecting planning and executing of its infiltration activities at Standing Rock, is but one example of its sanctionable behavior, violative of its legal obligations.

The documents presented evidence that TigerSwan planned infiltration activities prior to the incident on the Backwater Bridge and that it engaged in those activities with evidence that they were ongoing close in time to, and apparently during, the Backwater Bridge incident. The planning documents were in November 2016, just weeks prior to the Backwater Bridge incident of November 20-21 at issue and other documents refer retrospectively to infiltration operations that were occurring in the weeks before the first week of December 2016. Despite these documents showing TigerSwan's infiltration planning, infiltration execution and activities, communications discussing evacuating an infiltrator from a camp, and after-action reports bragging about its infiltration operations, TigerSwan, under penalty of perjury, claimed it did not infiltrate the water protectors, protestors or camps at Standing Rock.

TigerSwan's answers to all seven Topics were equivocal, flatly contradicted by documentary information shown to the designee and/or improperly qualified by the designee based on his personal view or hypothetical assumptions. This is not an allowable response to a deposition taken pursuant to Rule 30(b)(6) and is a failure that is akin to a failure to appear for a deposition. *See* Fed. R. Civ. Pro. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.")

II.     **TigerSwan failed to adequately prepare its witness to testify to the entity's collective knowledge fully and unevasively regarding all seven Topics.**

TigerSwan was intentionally unprepared to testify fully on *any* of the 7 topics. Within the first few minutes of the deposition, it was clear that TigerSwan had intentionally failed to prepare itself by reviewing documents or talking to its agents, in order to disclaim knowledge and responsive information on the Topics.

a.  **TigerSwan deliberately lacked knowledge and was unprepared to testify to the entity's collective knowledge as a result of its cursory review of a few of the public domain documents in preparation for the deposition.**

TigerSwan was unabashed about its lack of inquiry, stating for Topic one "I didn't need to do any research on that…[because] we had no activity with regard to Backwater Bridge." (23:5–17). Yet when asked how TigerSwan determined no one was there, the designee's response was "we relied on my personal knowledge." (101:17). TigerSwan's duty to prepare its Rule 30(b)(6) deponent for deposition "goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved," and TigerSwan failed to fulfill its duty. *See QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012).

TigerSwan's intentional unpreparedness is evidenced, in part, by the designee describing his own review as "cursory" of the documents he had be supplied for the deposition. (164:14–21; 168: 2–4). Moreover, the documents he did review were only those in the public domain, and he did not even review all the documents provided to him. (18:7–16; 91:3–7). The designee could not identify the documents he was given or reviewed, but testified it included "some publicly available suspicion reports that *supposedly* TigerSwan has generated for ETP." (21:19–21) (emphasis added). Throughout the deposition, TigerSwan was evasive in admitting ownership of both the documents and the information contained within the documents even where documents

9

were written by its personnel, circulated among its personnel and written with the TigerSwan logo atop the documents. Despite its insincere questioning of the ownership of the documents or describing them as "supposedly TigerSwan's," it made no effort to verify whether they were or were not in fact TigerSwan documents, and never provided any grounds to doubt their authenticity.

Even for the TigerSwan documents the designee did bother to review, the witness routinely answered he did not know what the documents meant, what they were based on, who wrote/created them, or why someone at TigerSwan would document the content. (*See e.g.,* (41:18-19; 42:2-7, 21). "A Rule 30(b)(6) witness is obligated to become educated to the extent possible about the identified topics, although perfection is not expected." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019).

For example, when asked about TigerSwan's communication and interaction with law enforcement between October 22– November 28, 2016, (Topics 3 and 4), the designee testified, based on his personal knowledge, that there were daily briefings while he was there from September 15–October 13, 2016, but he does not know if they continued after he left. (117:14–118:1–6, 118:16–119:6, 199:16–21). Thus, for these two topics, not only could the designee merely testify to his personal recollection, and not TigerSwan's, but even his personal knowledge predated the time period specifically identified in the Topics.[2] TigerSwan had "daily or near daily" communications and interactions with law enforcement that were not all documented, yet TigerSwan did nothing to prepare itself as to the collective knowledge of the entity on this issue and did not seek to inquire of its personnel who had these communications

---

[2] The designee was not even forthcoming or knowledgeable with his own direct emails to law enforcement for the time he was involved, rather he testified as to assumptions on where, how, and from whom, he got the information he sent to police. (208:19–211:3)

10

where it would pass on information from its informants to law enforcement despite this information being requested in the identified Topics. For TigerSwan to. (109:14–14; 113:8–11).

Specifically regarding TigerSwan's communication with law enforcement about the Backwater Bridge incident (Topic 4), the designee knew there were communications, but did not know when, or how, the communications were made and he could only *guess* who made them. (103:2–15; 104:2–22). The designee guessed it would be one of two employees on TigerSwan's side who would have communicated with law enforcement. (103:11–19; 111:4–6). Guessing is another example of the witnesses' failure to properly prepare for the deposition. Further, despite being explicitly identified in Topics 3 and 4, TigerSwan never inquired of these two possible employees about their communications with law enforcement during this period, even though one of the two was the sole person the designee did speak with in preparation for the deposition. (111:7–10). No attempt was even made to contact the other possible employee informant, who was TigerSwan's leadership on the ground. (106:8-18; 103:16-19).

    **b. TigerSwan was unprepared for the deposition having made no meaningful effort to contact its own personnel who would have information on the seven Topics, including those TigerSwan personnel specifically identified in documents as being involved, including its own CEO.**

TigerSwan's failure to obtain or review documents heightened the importance of speaking to its staff and agents to learn what they know on the Topics. The publicly available documents included emails and chat logs between TigerSwan employees about TigerSwan's involvement at Standing Rock, with law enforcement, and as infiltrators (Topics 1, 2, 3, 4, 5, 6). (Depo Exh. 2, 4, 5)

On the issue of infiltrators, (Topics 1, 2, 5), one of the public documents the designee stated he reviewed was an email chain with a PowerPoint breaking down what TigerSwan personnel titled "Operation Baratheon," in which TigerSwan personnel planned to infiltrate the

11

Standing Rock camps. (28:18-29:7; Depo Exh. 2 pg. 5). These emails included at least six different individuals with TigerSwan email addresses. (44:4-8; Depo Exh. 2 pg. 1-2). Out of these seven known TigerSwan employees who were communicating about the detailed mission to infiltrate the camps, TigerSwan only spoke with one of those individuals, *but did not ask him* about the email or infiltration mission. (29:20-30:6). TigerSwan *never tried to speak with any of the other six TigerSwan employees* to determine what they knew about the Topics. (95:17-96:20).

The same was true for all of the Topics. TigerSwan made no effort to contact, or otherwise get information from, its own people who were on the ground at Standing Rock, and who would be knowledgeable as to the subjects of that topic. (158:21–159:20).

TigerSwan did not even have its designee speak with or obtain information from the founder and CEO of TigerSwan, James Reese*, despite Mr. Reese personally traveling to Standing Rock to hand out cash to TigerSwan's infiltrators to avoid the infiltrators having to use a credit card.*[3] (182:21–183:9; 194:4–9; Depo Exh. 5). No attempt was made despite this fact being stated in a document the designee reviewed in advance of the deposition, which was a chat among apparent infiltrators, discussing their infiltration activities and also including vulgar, racist and misogynist language. TigerSwan instead dismissed its activities as detailed in the document as "foolishness," and suggested that it had no obligation to be prepared as to the topic of its self-described "foolish" activities, despite the document containing specific evidence that TigerSwan undertook those infiltration actions. (163:2-7).

---

[3] Any sworn statement Reese may have given in another case does not relieve TigerSwan from testifying to his knowledge as part of the entity's knowledge. *See Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, No. 2:15-cv-3023, 2018 WL 3358641, at *12 (S.D. Ohio July 10, 2018).

**Relief Requested**

**I.     TigerSwan should be ordered to designate and thoroughly prepare designee(s) to testify knowledgably, fully, and unevasively on all seven Topics.**

TigerSwan violated its duty to designate knowledgeable persons to testify for the Rule 30(b)(6) deposition, and "more importantly, prepare them to fully and unevasively answer questions about the designated subject matter." *Remote Techs., Inc. v. Data Int'l Co.,* No. 10–1678 (MJD/JSM), 2012 U.S. Dist. LEXIS 200576, at *39–45 (D. Minn. July 31, 2012).

The deponent designated by Tiger Swan on specified topics was wholly unprepared, openly admitted his lack of knowledge, was intentionally evasive, and did not provide adequate answers for any of the Topics. If a Rule 30(b)(6) designated witness "is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Wood v. Paccar, Inc.,* No. 19–cv–1010–LRR, 2020 U.S. Dist. LEXIS 28116, at *26–30 (N.D. Iowa Feb. 19, 2020) (citing *Resolution Tr. Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993)).

Therefore, plaintiffs request this Court issue an order requiring TigerSwan to designate and thoroughly prepare a designee, or designees, for deposition who can testify as to all seven Topics of Examination knowledgeably, fully, and unevasively. *See Ronnoco Coffee, LLC v. Castagna,* No. 4:21–CV–00071 JAR, 2021 U.S. Dist. LEXIS 98252, at *2–4 (E.D. Mo. May 25, 2021) (finding an ineffective Rule 30(b)(6) deposition may be remedied by a second deposition ordered by the court). Plaintiffs request the full seven hours for the new deposition as the first deponent failed to provide meaningful responses and wasted litigation resources with

intentionally unprepared, evasive and misleading answers.[4]

Additionally, as part of TigerSwan's preparation for the deposition, they should be specifically ordered to make a conscientious good faith effort to contact the personnel involved, including those named in TigerSwan's own documents detailing its planning and execution of infiltration and other activities, and determine his/her knowledge of the Topics. (*See, e.g.,* 114:22 – 115-5; 127:15 – 132:2; 133:1 – 135:7; 168:5 – 169:6)

## II. Provision of central TigerSwan documents currently in the possession of ETP

Throughout the deposition, TigerSwan claimed that documents of its own creation, reflecting and recording its activities, and that are necessary to adequately prepare for the deposition, were no longer in its possession and were solely in the possession of Energy Transfer Partners (ETP), having been delivered to ETP by TigerSwan. (60:9-11; 79:18 – 80:9; 81:8-15; 90: 1-6; 108:3 – 18; 115:3-17; 123:21 – 124:10; 189:1 – 190:1; 190:21-22; 192:13-18)

TigerSwan asserted that they are unable to adequately prepare for the deposition due to their own records reflecting their personnel posing among and acting amidst water protectors and protesters, as well as records reflecting their communications with law enforcement, being in the possession of ETP. Plaintiffs request an order be issued requiring ETP to make these materials available for plaintiff's review. In the alternative, plaintiffs request the court grant plaintiffs an additional subpoena that it may direct to ETP for the records reflecting TigerSwan's activities as identified in the Topics of Examination, which are material to the matters at issue in the pending dispositive motion filed by Defendants[5].

---

[4] The June 10 deposition of TigerSwan lasted four hours and fifty–four minutes.

[5] Plaintiffs are concerned about the apparent conflict of interest present, where Defendant law enforcement entities share the same counsel with ETP, and where ETP has sued TigerSwan to

14

### III. TigerSwan should bear the cost of intentional unpreparedness and evasiveness and failure to comply with its obligations under 30(b)(6).

Federal Rule of Civil Procedure 37 permits both a motion to compel and for sanctions on a 30(b)(6) deponent corporation. Rule 37 also permits this Court to impose sanctions where a party necessitates the filing of a motion to compel. *See Scheetz v. Van Vooren*, CIV 13–4114–KES, 2017 WL 5633105, at *5 (D.S.D. Nov. 21, 2017). Moreover, Rule 37(a)(4) specifically requires that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." As this was the case with TigerSwan, plaintiffs request sanctions against TigerSwan for its intentional failure to prepare a knowledgeable witness who could fully answer questions on the Topics at the June 10 deposition. *See DarbeeVision, Inc. v. C&A Mktg., Inc.*, No. CV–18–0725, 2019 WL 2902697, at *9 ("What is not proper practice is to refuse to comply with the notice, put the burden on the party noticing the deposition to file a motion to compel, and then seek to justify non–compliance in opposition to the motion to compel").

Specifically, plaintiffs request that this Court order TigerSwan to pay the attorney fees and costs associated with this motion and with conducting the deficient TigerSwan 30(b)(6) deposition.

July 2, 2021

Respectfully submitted,

/S/ *Mara Verheyden-Hilliard*
Mara Verheyden-Hilliard
Partnership for Civil Justice Fund
617 Florida Avenue NW, Washington, D.C. 20001
202-232-1180
mvh@justiceonline.org

---

enforce confidentiality as to its unlicensed paramilitary activities with regard to water protectors in the instant matter. TigerSwan has now failed to provide required information as to its activities which is necessary for plaintiffs' opposition to Defendants' dispositive motions.

Rachel Lederman
Alexsis C. Beach & Rachel Lederman, Attorneys
P.O. Box 40339, San Francisco, CA 94140-0339
415-282-9300
rachel@sfbla.com

Natali Segovia
Water Protector Legal Collective
P.O. Box 37065, Albuquerque, NM 87176
602-796-7034
defense@waterprotectorlegal.org

Melinda Power
West Town Law Office,
2502 W. Division, Chicago, Il. 60622
773-278-6706
melindapower1@gmail.com

Janine L. Hoft
People's Law Office
1180 N. Milwaukee Avenue
Chicago, IL  60642
773/235-0070
janinehoft@gmail.com