STATE OF NORTH DAKOTA

NORTH DAKOTA PRIVATE INVESTIGATIVE AND SECURITY BOARD

| | | |
|---|---|---|
| North Dakota Private Investigative And Security Board, | ) ) ) | OAH File No. 20190070 |
| Petitioner, | ) ) ) | **JAMES PATRICK REESE'S AFFIDAVIT IN REGARDS TO OUR ALLEGED NONCOMPLIANCE** |
| vs. | ) ) | |
| TigerSwan, LLC and James Patrick Reese, | ) ) ) | |
| Respondents. | ) ) | |

I, James Patrick Reese, hereby state the following under oath:

1. I was formerly the CEO of TigerSwan. I sold TigerSwan in August 2019.

2. I am able to state that TigerSwan had an understanding with ETP that TigerSwan would, as much as possible, consider any information about our work in North Dakota or for that matter any of our work with ETP as confidential and proprietary. According to our contract, TigerSwan has a specific obligation to do exactly that, which is to retain any confidential information received while working for ETP, and refused to disclose any documents or other materials due to the fact that ETP considers those documents and any other materials owned by ETP, and asserts proprietary and confidential interest. It is for this reason that, throughout this litigation, done everything we could do to prevent disclosure of anything we may have on hand relating to ETP and the work we did for them.

3. I note that all of our attempts to protect the documents and not provide the board <u>any</u> discovery was based on good faith arguments, including our strongly held view that we should not have to provide the board any evidence to be used against us. However, once the court ruled against us as to this issue, we provided answers and substantial documents – indeed, all the documents we had, including some that apply to other states and did not need to be provided.

4. It was also my understanding that at the conclusion of working for ETP, all documents and materials and any information relating to our work with ETP are purged, and that this was one of the requirements of ETP.

5. I strongly believe that we provided substantial compliance to the discovery and to the court's order. In the few days we had, we did our best to take out those items which do not relate to North Dakota. But it is undisputed that we provided thousands of documents, indeed our complete file. TigerSwan also worked with James Reese – who no longer works for TigerSwan and lives elsewhere – to get all the needed information we could from him. If there are specific items missing and brought to our attention with specificity (and not a general "you're in

1

**EXHIBIT B**

noncompliance" statements from the board's attorney) we will do our best to answer those items which supposedly have not been answered.

6. What I do not understand is how the board claims we are being noncompliant and actually said we were lying! Without knowledge of the facts it is simple to grab one or two pieces of information and claim that we are not being transparent, when the board was given multiple opportunities to come on site and see what TigerSwan was doing for ETP. I fail to understand how the board is allowed to make these assertions based on the board's opinion, and we don't have an opportunity to provide to the court actual evidence and actual testimony.

7. **In the notice of noncompliance dated June 9, 2020, paragraph 5**, the board asserts that the answers provided are incomplete and inconsistent with the documents provided by TigerSwan, and specifically asserts that the answers we provided were willfully false and misleading.

> **RESPONSE**: Not true. The board is getting information that is almost 4 years old. No misleading intended. There are not many TigerSwan employees left, who remember or have recollections of the DAPL project. The Board is also comparing snapshots of documents compared with news articles.
> I provided truthful answers, and the only reason the board thinks that the answers are incomplete or inconsistent is because the board doesn't know the facts. It is up to a court hearing or trial to determine what is actually true or false, and not based simply on the board's assertion that I provided incorrect information. The board considers one sided news reports from an anti-energy on-line publication a sufficient basis for calling me a liar. The media reports are not under oath, and the people who provided that information to the media did not do so under oath either.
>
> I provided truthful answers to the best of my ability with my limited knowledge of day to day operations.
> As the CEO of TigerSwan, I received a weekly strategic briefing about ALL ongoing contracts in TigerSwan to include DAPL.
> I provided information to the best of my ability by reading the reports and paperwork provided to the board and attempted to put places the pieces together, though I had no daily direct knowledge.

8. **Exhibit 3 <u>appears</u> to shows TigerSwan had 3 HUMINT people in the camps and they also have one document which lists McCullough as an employee for numerous days, and some receipts where he purchased items and supposedly, we reimburse him for those items.**

> **RESPONSE: We had no personnel conducting Private Investigative work in the camps to the best of our knowledge.** First of all, let's not forget the real issue: Did any of OUR employees provide investigative or security services in North Dakota. They did not. Anyone inside the camp providing investigative services were hired by someone else. Did the information those persons provided end up in ETP reports? Yes, our job was to put the information supplied by others into the reports. We did not employ these people at the time there were individuals in the camp.
> In addition, HUMINT does not mean they were in the camp. Those assigned as HUMINT were research/reports writers who focused on information from sources along

2

the pipeline. After reviewing and reading the reports sent in to the board, the reports are HUMINT <u>analytics.</u> They took the information from companies in the field, LE, sources, and ETP sources and wrote reports that went into the daily situation report. They were the responsible reports officers for the HUMINT side. They were not conducting HUMINT themselves, but merely receiving HUMINT information and placing it into reports.

      The lesson learned corporately, was the use of military jargon should not have been used in this corporate setting. Because we had a heavy dose of veterans, the veterans leaned towards what they know and how to communicate with military jargon.

      Joel McCullough was an employee with his base of operations in Iowa and North Carolina. I do not know why there were receipts for a Hotel in FARGO ND on one day, and then the next day he submitted receipts for a Hotel in ILLIONOIS. The situation on the ground was fluid. The Project Manager had flexibility to move people where needed as directed by ETP. I speculate that the receipts in March were used because the project manager was moving equipment from North Dakota to Iowa and he may have had Mr. McCullough come up to pick up some of that equipment.

**9. I will now go through their notice of noncompliance document dated June 9, 2020, paragraph by paragraph, so as to explain why the facts and that conclusions and assertions contained therein are incorrect.**

10. **As to notice of noncompliance document dated June 9, 2020, paragraph 10**, there is an assertion that the media reports the TigerSwan deployed one or more employees or independent contractors to infiltrate the protest camps in North Dakota. These media reports are absolutely false and incorrect.

> **RESPONSE:** Mr. McCullough worked for TS as an IC. He was listed as a HUMINT analyst in Iowa (IA). I'm not sure if the DAPL leadership may have had him come to ND for a few days. According to the receipts, it looks like he spent two days in ND in March. My speculation is he was brought him up to deliver equipment, or to pick up equipment to bring to Iowa as DAPL North Dakota was shutting down.
>
>       We have consistently asserted that Mr. McCullough did not conduct private security work in North Dakota. The intercept article alleges he was in ND and spent a few days in the Casino. We understand that he came on his own accord as he was writing an article. Mr. McCullough has had several articles published over the years on a variety of veteran views and activities. TigerSwan hired him for work in Iowa and North Carolina. In conjunction with hiring him to do work in Iowa,
>
>       In the exhibits are two receipts for two nights in March of 2017 where Mr. McCullough spent the night in FARGO, not BISMARCK, which allows me to make the assumption that he was picking up excess equipment in March of 2017 to bring to Iowa as the contract in North Dakota was shutting down. That is speculation based on the information that we have.
>
>       I was not aware that he came up from Iowa when we started to close down operations in North Dakota. after reviewing the documents, I determined that was the case.
>
>       Based on the WhatsApp log it seems he relayed information about people he met in the area when he traveled to North Dakota on his own accord in December 2016. The

3

research analyst took that information and published it in the reports during this period. Mr. McCullough was not an IC for TigerSwan during this time period according to the records available.

11. **As to notice of noncompliance document dated June 9, 2020, Exhibit 3:**

> **RESPONSE:** Exhibit 3 page 1. -This slide is describing the <u>proposed</u> North Dakota organizational chart. The only analyst who was there was Logan Davis. Zach Perez was in Illinois and Joel was in Iowa.
> 
> Exhibit 3 page 2 was a slide done created the Project Management office. James Reese was not the senior consultant. The Obama administration had put a stop work order on DAPL, and TigerSwan released people to go home for the holiday as ETP told us to downsize the fusion center during the shutdown. That is why on this page you don't see names such as Joel or Zach. We were told to downsize because there was no working on DAPL.
> 
> The Project management team has me listed as the Senior Consultant but there was no daily interaction with me and ETP. If I did, it was CEO level aspects such as funding or looking ahead for new opportunities. I was in North Dakota twice and only spent one night there; I believe on my second trip.
> 
> Part 1 Exhibit 3 page 3-6 is dated November 2016 and is a <u>PROPOSED</u> idea that was <u>NOT APPROVED BY TigerSwan.</u> It was disapproved because TigerSwan was not licensed to do this type of private investigator work and our former military intel analyst were looking at this from their experiences abroad and not domestically.

12. **As to notice of noncompliance document dated June 9, 2020, paragraph 18**, we did provide the ownership of TigerSwan.

13. **As to notice of noncompliance document dated June 9, 2020, paragraph 19**, we provided the list of the people with knowledge and facts of the matter.

> **RESPONSE:** The board is familiar with each of the companies listed, and the law enforcement personnel who were on site. They also have a listing of all the TigerSwan employees who worked in North Dakota through our roster list. We provided specific names, and listed the job titles.

14. **As to notice of noncompliance document dated June 9, 2020, paragraph 20**, the board asserts that we have no right to make an objection that anything that occurred at the state is beyond the board's jurisdiction.

**RESPONSE:** Our objections were made in good faith, and counsel for TigerSwan and James Reese has asserted from day one that the board has no jurisdiction over any of TigerSwan's and James Reese activities outside the state of North Dakota. The objection and our responses have been made in good faith.

4

15. **As to notice of noncompliance document dated June 9, 2020, paragraph 21**, the board asserts that we failed to tell them what we did in North Dakota, although we have in previous answers repeatedly told the board what TigerSwan did.

> **RESPONSE:** This information was provided by Attorney Forward to Attorney Rogneby in response to the board's request for this very information, TigerSwan responded to the first letter from the board in October 2016 and described what they were doing. TigerSwan responded to another letter in November 2016. TigerSwan sent the board describing their actions.
>
> **WE INVITED THE BOARD TO COME TO OUR LOCATION IN MANDIN** to allow them to SEE WHAT WE WERE DOING AND WE WOULD TAKE THEM FOR A TOUR OF THE ROW and they could see all the law enforcement and see the licensed security companies on the ROW doing security. **In fact, CAPTAIN RANDY ZEIGLER WHO WAS AND IS A MEMBER OF THE BOARD HAD THE DAILY ability to see what was going on because his officers were working in support of DAPL operations and were customers to the reports we were providing.** This was a perfect time for the board to come and see what we were doing and fix this entire process if TigerSwan was doing anything where we needed a license (security or investigative work). If they had any issues, they could have told us right then.

16. **As to notice of noncompliance document dated June 9, 2020, paragraph 22**, the board asserts we have not told the board who was on site.

> **RESPONSE:** TigerSwan provided the manning roster, which lists all the employees who were independent contractors providing services for TigerSwan in North Dakota. In addition, we provided all available documents relating to our work in North Dakota, which included invoices.
> We do not list James Reese as an employee as he was the CEO of TigerSwan. In addition, while visiting North Dakota twice, James Reese conducted meet and greets of ETP and TigerSwan DAPL management, met with leadership of the private security companies working in support of DAPL, TigerSwan personnel and several of the leadership of the Sheriff's office, State Highway Patrol and **Bismarck Police to include Deputy Chief of Bismarck Police, Captain Randy Zeigler (who is a member of the board when we met and currently a member-his officers were customers of the reports the TigerSwan Fusion center distributed).**
>
> James Reese DID NOT participate in any type of private security services or private investigative services. He was in the state maybe a total of 2 days.

17. **As to notice of noncompliance document dated June 9, 2020, paragraph 24**, there is reference to what the "board describes as a history of human intelligence agents who work in North Dakota."

> **RESPONSE:** To the best of my knowledge any individuals, if any, who conducted private investigation work worked for other entities involved with DAPL. The 3 TigerSwan individuals listed in Exhibit 3 were hired by TigerSwan as research analyst, as

5

can clearly be seen from the invoices we provided. TigerSwan's role was to pull together information from any sources, including persons on-site who did not work for us.

All of the military jargon used, HUMINT, SIGINGT, IMINT, came from our research analyst attempting to focus the personnel on certain analytical roles. In hindsight we should have caught this and stayed away from the military roles. However, we took over this project so fast as consultants, our onsite leadership went with what they know.

**18. As to notice of noncompliance document dated June 9, 2020, Exhibit 3 pages 5-14**, has references to **RB** leaving the North Dakota camp by an extraction.

> **RESPONSE:** This was a PROPOSED operation that was **not approved** by TigerSwan HQ in North Carolina. This was a briefing that went up the chain of command for approval and was denied.

**19. As to notice of noncompliance document dated June 9, 2020, Exhibit 3 pages 15-19**, has various information on HUMINT sources and capabilities.

> **RESPONSE:** This entire document is a synopsis of information from source inside the camp or protesters who spoke freely to private investigators from other organizations, or from Facebook live broadcast, TV or other media interviews with protestors. We were not gathering any of this information, it was received from third parties and put into a report for our customers including the Law Enforcement agencies and private security companies providing security whose members sit on the board.

**20. As to notice of noncompliance document dated June 9, 2020, Exhibit 3, pages 20-28**, is a power point presentation or report dated 17 April 2017.

> **RESPONSE:** This presentation relates to the new focus of DAPL which is now in other states and what the focus was outside of North Dakota. It is general info about Human intelligence in Iowa and Illinois. <u>Not</u> North Dakota. On this date of 17 April TigerSwan had 5 personnel remaining in North Dakota; research analyst and project management office.

**21. As to notice of noncompliance document dated June 9, 2020, Exhibit 3, page 25** refers to TS CI/HUMINT infiltrators on the ground "being critical."

> **RESPONSE:**
> 1. None of document relates to North Dakota. The concentration of support was in South Dakota, Iowa and Illinois. The content is clear that this briefing relates to other state, most certainly Iowa. Indeed, the photo on page 26 clearly refers to Des Moines River.
> 2. By Mid-April of 2017 TigerSwan was basically out of North Dakota. TigerSwan had very few people left and were most certainly not providing any type of investigative services or security services – which we never did in North Dakota.

22. **As to notice of noncompliance document dated June 9, 2020, Exhibit 3, pages 29-30,** emails relating to Logan Davis and a report generated from the information received.

> **RESPONSE:** This email was forwarded to us. The person who prepared the report was from Silverton. We don't know what she forwarded but it was not information gathered by us. A standard report was generated relating to the information received from Silverton. The email sent to Silverton and forward to TigerSwan was from a Logan Davis who worked for another organization during the period of this email.

23. **As to notice of noncompliance document dated June 9, 2020, Exhibit 3, page 31,** the invoice relating to Joel McCullough.

> **RESPONSE:** James Reese was not unaware that Joel McCullough was brought back to assist in the close out of North Dakota by the Project Management team. The close out dealt with packing everything up. TigerSwan was not providing any services at that time in North Dakota, and certainly not investigative or security. He is listed as HUMINT ND because that was his general category as an analysist of HUMINT info – in other states he had other roles, but not in North Dakota. During these days – Feb 24 to Mar 9 –I have no idea which state Mr. McCullough was located.

24. **As to notice of noncompliance document dated June 9, 2020, Exhibit 3, page 32-34,** hotel reservations.

> **RESPONSE:** The reservation receipts do not list Joel McCullough as the person staying in the room. That being said, it is clear that the reservations relate to leaving North Dakota. The first two are in Fargo and are for the same night, two rooms. The third one is in Peoria Illinois, also two rooms. Whoever stayed in these rooms were moving south and ended up in Illinois the next day.

25. **As to notice of noncompliance document dated June 9, 2020, Exhibit 3, page 35-36,** gas receipts, two of which show Joel McCullough's name.

> **RESPONSE:** These receipts only show that Joel got gas from March 14 to March 20 in Bismarck or Mandan. We were in the process of closing down. Joel was not doing either security services or investigative services for us at that time.

26. **As to notice of noncompliance document dated June 9, 2020, Exhibit 3, page 37-38,** emails relating to Logan Davis.

> **RESPONSE:** This email occurred after one of the Intercept articles came out and we were internally trying to figure out where the leak came from. We were not doing any investigation services for any third person, just ourselves. And by this point we were in the process of closing down North Dakota. We listed who knew who the federal agent's word who were working a project. When John Porter describes that he made the call to have the person evacuated, he made the recommendation to ETP along with the Federal Enforcement officers to have the person evacuated.

**27. As to notice of noncompliance document dated June 9, 2020, paragraph 27,** reference to both research analysts and Intel analysts in regards William Janisch.

> **RESPONSE:** These terms relate to the same position., Research Analyst is the correct naming convention. Not intel analyst. Again, Law Enforcement and military went with what they know. Those two positions are synonymous with each other. We corrected intel to research because "intel" had too much of a military or law enforcement sound and we were working to bring the positions to a corporate standing.

**28. As to notice of noncompliance document dated June 9, 2020, paragraph 28,**

> **RESPONSE:** I do not know who or if Stuart Kortes operated a drone, but I do know that ETP had a drone that was only flown over the ROW (Right of Way) and the ROW was ETP private property from the ground up to 500 Feet AGL (above ground level). I believe the reference to "our" drone was generic and it was ETP's drone that was used and operated by ETP. As per the email listed from the board's lawyer on an email about a purchase of a drone or an IPAD to see the drone feed. Any equipment bought by TigerSwan in support of the DAPL project became ETP property.
>
> I do know from a report I read in reports that were submitted to ETP, that the drone operators from the protestors flew drones over ETP private property and took pictures and video of critical infrastructure in direct violation of Homeland security directives of United States critical infrastructure! **Do those operators of Drones from the protestors get fined for doing Private Investigator work against ETP?**

**29. As to notice of noncompliance document dated June 9, 2020, paragraph 29,** there are references to various titles, hiring position, and tasking order for several people.

> **RESPONSE:** "Site Security Advisor" does not mean conducting security – that person is providing advice and consulting and providing recommendations to ETP with respect to Health, Safety, Security and Environmental (HSSE) aspects of the private property on the ROW. As for an aerial photographer. ETP did their own aerial photography with their contracted Helicopter. At times, ETP would request one of our advisors to go up in the helicopter and take still photos of the ROW and Pipeline.

**30. As to notice of noncompliance document dated June 9, 2020, paragraph 30,** there are references to various titles, hiring position, and tasking order for several people.

> **RESPONSE:** See 29

**31. As to notice of noncompliance document dated June 9, 2020, paragraph 31,** there are references to various titles, hiring position, and tasking order for several people, and use of Facebook.

**RESPONSE:** Mr. Chembloski was a Fencing Engineer Advisor. ETP ASKED US FOR AN ENGINEER WHO COULD ASSIST THE ETP PROJECT MANAGER WITH AREAS FOR FENCING AND TO PROVIDE SUPERVISION OF THE FENCING CONTRACTORS THAT WERE BROUGHT IN TO DO

FENCING ALONG THE ROW. ALL ON PRIVATE PROPERTY. GEORGE ALSO DID THE PLANS FOR THE FENCE AROUND THE HDD SITE.
As for the reference of the Facebook research. Everyone on all sides continuously reviewed Facebook which is an open source medium.

32. **As to notice of noncompliance document dated June 9, 2020, paragraph 32**, refers to certain initials or designations that the board does not understand.

> **RESPONSE:** "PM" is project manager, "DPM, OPS" is deputy project manager for operational support, and "DPM" is deputy project manager. The other initials on the manning rooster are 'ROW" right-of-way. "INTEL" means intelligence but that does not mean the person was gathering intelligence but was putting the intelligence received from others into the reports we prepared for ETP. Same with Research Analysist.

33. **As to notice of noncompliance document dated June 9, 2020, paragraph 34**, It is my understanding TigerSwan has provided all documents they have remaining in their systems including task orders and invoices.

34. **As to notice of noncompliance document dated June 9, 2020, paragraph 35,**

> **RESPONSE:** The briefing the board describes about inserting Mr. McCullough was a decision brief that was denied from TigerSwan HQ and was never executed.

35. **As to notice of noncompliance document dated June 9, 2020, Exhibit 3, page 31,** which shows an invoice listing Joel McCullough as having a position of HUMIINT at the daily rate of $450.

> **RESPONSE:** Mr. McCullough was hired by TigerSwan <u>to work in Iowa</u> as a research analyst to collate protestor information provided by media personnel doing media scrapes or other PI sources that were gathering information or Law enforcement official, she also had research oversight of Iowa.
> During the period described by the board on an invoice, Mr. Reese had no idea that Mr. McCullough had worked in North Dakota, and when he reviewed the invoice it does not state where exactly he was working geographically during that period. The dates correspond when TigerSwan was shutting down the North Dakota operation. He may have been brought in from Iowa to help with the close down process. I was not aware of this until reviewing the document.

36. **As to notice of noncompliance document dated June 9, 2020, paragraph pages 35 to 36** receipts with Joel McCullough's name on them. It also includes **gas receipts** for 3 different times, 3-20-17, 3-18-17, and 3-14-17 two in **Bismarck** and one in **Mandan**.

> **RESPONSE:** Mr. Reese has  no information on these receipts.

9

37. **As to notice of noncompliance document dated June 9, 2020, Exhibit 3 page 37 is an email from John Porter stating he made a decision to pull Logan out of the camp.**

> **RESPONSE:** The email is from May 28, 2017, Mr. Porter is stating that he advised ETP to pull a person out of the camps. This person we believe was a source of ETP and was a source before TigerSwan was brought onto the DAPL contract. Mr. Porter advised ETP to pull him out, and it is my understanding there was support from Federal law enforcement to have him pulled out. The email leadership pontificating who knew the information and who could have leaked the information. <u>As shown by the manning rooster, Mr. Porter left North Dakota on May 12 and returned only to close things down from June 10 to June 23.</u> He was in Iowa by then.

38. **As to notice of noncompliance document dated June 9, 2020, paragraphs 38 and 39,** The board makes reference to the employees of OnPoint security group and TigerSwan hiring 8 of their people.

> **RESPONSE:** ETP asked TigerSwan to hire additional security for a period of time along the pipeline once it crossed under the river and the pipeline was being joined up with the pipe from South Dakota. TigerSwan was not licensed to do security so we hired OnPoint and 10 Code. Those two companies filled the private security role. ETP stated stated they no longer needed security, but needed people to help build fences around the valve sites we hired 8 of their people who had the ability to help with the fences and inspect the valve sites to ensure they were done correctly.

39. **As to notice of noncompliance document dated June 9, 2020, paragraph 40,** Mr. Reese and TigerSwan supplemented that objection from the board so that the factual information came from Mr. Reese instead of Attorney Boughey.

> **RESPONSE: MR Reese has been truthful in all answers to the best of his limited knowledge of daily activities.**
>
> **The Board had a great opportunity from October 2016-June 2017 to see for themselves what TigerSwan was doing for the DAPL project, but the board never took the opportunity to see for themselves what the DAPL project was and what many of the local companies were also working on.**
>
> **The Board had an opportunity to get firsthand knowledge one of their board members Captain Randy Zeigler from the Bismarck Police Departments, whose officers met and worked daily with the TigerSwan Fusion Center. If the board had issues with TigerSwan, why did they not direct Captain Zeigler to make a report and then file a grievance with TigerSwan to fix aspects the board MAY have thought we were doing wrong?**

40. **As to notice of noncompliance document dated June 9, 2020, paragraph 43,**

> **RESPONSE:** The previous responses about Mr. McCullough employment were focused on the allegation that Mr. McCullough infiltrated the protestor camp at Standing Rock.

10

This focus on the wrong part of the question, showed an incorrect response to the boards question.

Mr., McCullough was an independent contractor of TigerSwan. He was **not** a TigerSwan IC when he is alleged to have conducted Private Investigator work in North Dakota. He was hired by TigerSwan to be a research analyst in Iowa.

It does appear with some receipts the board received from us, that Mr. McCullough was employed by TigerSwan for a few days while Mr. McCullough was in North Dakota. I have no idea why Mr. McCullough was in North Dakota for a day or two. I speculate that the Project Manager may have had him drive up equipment or assist we removing ETP equipment when TigerSwan started to break down operations in North Dakota. So yes, he does appear to have worked a few days for TigerSwan in North Dakota, but this was not his normal place of duty, and he was not conducting

41. **In regards to request for production of documents**, TigerSwan has provided all documents they have to the best of my knowledge.

Signed this 24th day of June, 2020. I state this under oath under penalties of perjury.

*[signature]*
James Patrick Reese